IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-3019-D

LYNWOOD D. JENNETTE, )
)
    Plaintiff, )
)
v. ) **ORDER**
)
LIEUTENANT GORDON T. )
BEVERLY, et al., )
)
    Defendants. )

Lynwood D. Jennette, a former state inmate, brings this action under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights and seeking damages. See Am. Compl. [D.E. 3]. On February 10, 2015, the court reviewed the complaint under 28 U.S.C. § 1915A, allowed the action to proceed, and directed counsel for plaintiff to present summonses to the clerk for issuance [D.E. 4]. Plaintiff has served five defendants: the North Carolina Department of Public Safety ("DPS"); prison staff Lieutenant Gordon T. Beverly, Sergeant Dan T. McDaniel, and nurse Kathryn P. Cheever; and Dr. James D. Engleman. See, e.g., [D.E. 5–11, 15, 19, 22] (presentment and issuance of summonses and notices of appearance).[1] DPS, Beverly, McDaniel, Cheever, and Engleman move to dismiss the complaint. See [D.E. 25, 27, 36]; Fed. R. Civ. P. 12(b)(1)–(2), (6). As explained below, the court grants the motions to dismiss.

I.

On November 16, 2011, following his conviction in Dare County Superior Court of two counts of selling or delivering a Schedule II controlled substance, Jennette entered DPS custody at

---

[1] Plaintiff has not presented summonses for or obtained service on defendants Cullen and Samantha LNU.

Craven Correctional Institution ("Craven"). Am. Compl. ¶¶ 13–14. Jennette has a history of peptic ulcer disease and stomach ulcers, and regularly took medicine to treat his condition before his incarceration. Id. ¶¶ 15–17. Jennette reported his medical history upon his admission to Craven during a medical screening interview, noting his need for medicine. Id. ¶¶ 18–19; Ex. A [D.E. 3] 15 (medical history report). Defendant Engleman "reviewed the reports produced as a result of Jennette's medical screening and was aware" of Jennette's medical history. Am. Compl. ¶ 23; see Ex. A.

On November 23, 2011, Jennette became nauseous and began vomiting. Am. Compl. ¶ 24. On November 24, 2011, Jennette's "vomiting became relentless," and he vomited "bright red blood" and "a substance resembling coffee grounds, . . . [which] is a classic symptom of an upper gastro-intestinal hemorrhage." Id. ¶¶ 29–32. Jennette complained to defendants Beverly and McDaniel, Craven correctional officers, about his stomach pain and requested medication, but they ignored Jennette's complaints and ultimately ordered Jennette's placement in "therapeutic housing" and, later, segregation. Id. ¶¶ 25–28, 37, 40. Jennette also "repeatedly sought treatment at the prison medical facility during which time he described his pain, suffering, and symptoms to [defendants] Nurse Cheever, Nurse Cullen, and Nurse Samantha LNU" and requested medication, but defendant Cullen refused to provide any medication to Jennette. Id. ¶¶ 35, 38. On November 24, 2011, at 8:10 p.m., Jennette was placed in segregation, and "there are no reports of any monitoring of Jennette between 8:30 p.m., November 24, 2011 and 5:00 a.m., November 25, 2011." Id. ¶¶ 40–41.

On November 25, 2011, at 5:00 a.m., a Craven correctional officer "was called to the segregation cell and found Jennette lying on the floor. . . . [W]hile confined to the segregation cell, Jennette discharged enough blood . . . to saturate the mattress and cover the cell floor." Id. ¶¶ 42–43. Defendant Cheever then contacted a doctor, who ordered prison staff to transport Jennette to the

2

hospital emergency room where physicians "diagnosed Jennette to be suffering from a gastro-intestinal bleed accompanied by renal failure and dehydration, and described his condition as critical." Id. ¶¶ 46–47.

Jennette asserts that defendants Beverly, McDaniel, Cheever, Cullen, Engleman, and Samantha LNU "inflicted cruel and inhumane punishment upon Jennette in violation of the Eighth Amendment to the United States Constitution." Id. ¶ 64. Jennette further asserts that defendant DPS "fail[ed] to properly train the individual named Defendants in their official capacities to recognize and respond to the life-threatening emergency medical condition suffered by Jennette" and "fail[ed] to publish and/or post appropriate guidelines to assist the individual named Defendants in their official capacities in recognizing and responding to the life-threatening emergency medical condition suffered by Jennette." Id. ¶¶ 68, 72. Jennette alleges, therefore, that defendants "manifested a deliberate and intentional indifference to the pain and suffering of Jennette to the extent that cruel and inhumane punishment was inflicted upon [him] in violation of the Eighth Amendment to the United States Constitution." Id. ¶ 75. Jennette names all defendants in their official capacities only. Id. 1 (caption), 5 (first claim for relief) & ¶¶ 22, 35, 39, 49–54, 63–64, 68–70, 72–75. Jennette seeks compensatory and punitive damages plus costs and attorneys' fees in an unspecified amount. Id. 13–14 (prayer for relief).

II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Because Jennette asserts that this court has subject-matter

3

jurisdiction, he must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 103–04; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court "may consider evidence outside the pleadings without converting the motion into one for summary judgment." See, e.g., Evans, 166 F.3d at 647 (quotation omitted).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

The court first addresses defendants' argument that the Eleventh Amendment bars Jennette's claims against them. "The Fourth Circuit has not definitively ruled on whether dismissal on Eleventh Amendment grounds is properly based on Rule 12(b)(1) or 12(b)(6)." Kirby v. N.C. State Univ., No. 5:13-CV-850-FL, 2015 WL 1036946, at *3 (E.D.N.C. Mar. 10, 2015) (unpublished) (citing Andrews v. Daw, 201 F.3d 521, 525 n.2 (4th Cir. 2000)); see Pele v. Penn. Higher Educ. Assistance Agency, 13 F. Supp. 3d 518, 521 (E.D. Va. 2014); Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 696–97 (M.D.N.C. 2013); cf. Constantine, 411 F.3d at 482. "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1). Whether

4

Eleventh Amendment immunity should be evaluated under Rule 12(b)(1) or 12(b)(6) is a distinction without a difference in this case given that the Court has relied solely on the pleadings in resolving that issue, having construed them in the light most favorable to" Jennette. Skaggs v. W. Reg'l Jail, Civil Action No. 3:13-3293, 2014 WL 66645, at *4 (S.D. W. Va. Jan. 8, 2014) (citations omitted) (unpublished) (collecting cases).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI; see Wright v. North Carolina, 787 F.3d 256, 261 (4th Cir. 2015). The Eleventh Amendment provides immunity from "suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Quern v. Jordan, 440 U.S. 332, 337 (1979); see Hafer v. Melo, 502 U.S. 21, 25–27 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). The Eleventh Amendment also "protects state agents and state instrumentalities" and confers upon them an entitlement of "immunity from suit rather than a mere defense to liability." Constantine, 411 F.3d at 479, 482 (emphasis and quotation omitted). Absent waiver by the state or a valid congressional override, the Eleventh Amendment bars actions for damages in federal court against state agencies and other government entities that are characterized as "arm[s] of the State." See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 427 n.2, 430 (1997) (quotation omitted). The bar extends to state employees sued in their official capacities. Will, 491 U.S. at 70–71; see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Thus, in their official capacities, these defendants are immune from suit for money damages. See, e.g., Hutto v. S.C. Ret. Sys., 773 F.3d 536, 549 (4th Cir. 2014); Ballenger v. Owens, 352 F.3d 842, 844–45 (4th Cir. 2003); Lynn v. West, 134 F.3d 582, 587 (4th Cir. 1998).

5

In opposition to this conclusion, Jennette contends that "the Eleventh Amendment is silent" on the issue and relies on Corum v. University of North Carolina, 330 N.C. 761, 413 S.E.2d 276 (1992), for the proposition "that in North Carolina, common law sovereign immunity does not bar claims brought by a North Carolina citizen based on alleged violations of constitutional rights." [D.E. 32] 7–9; see [D.E. 33] 12–15; [D.E. 39] 10–19. Simply put, the court rejects Jennette's argument that the Supreme Court of North Carolina's interpretation of the North Carolina Constitution in Corum informs how this court should interpret the Eleventh Amendment. See, e.g., Doe, 519 U.S. at 430; Hafer, 502 U.S. at 25–27; Will, 491 U.S. at 66, 70–71; Graham, 473 U.S. at 165–66; Quern, 440 U.S. at 337; Edelman, 415 U.S. at 663; Constantine, 411 F.3d at 482; Ballenger, 352 F.3d at 844–45; Lynn, 134 F.3d at 587. Indeed, the Supreme Court of North Carolina rejected Jennette's argument in Corum. See Corum, 330 N.C. at 771, 413 S.E.2d at 283 ("[U]nder section 1983[,] plaintiff... is barred from seeking damages from UNC, ASU, Harvey Durham in his official capacity, Dr. Thomas in his official capacity, or C.D. Spangler in his official capacity."). Moreover, Jennette has not sought leave to amend his complaint to name any defendant in his or her individual capacity, and this court is under no obligation to do so on his behalf. See Amos v. Md. Dep't of Pub. Safety & Corr. Servs., 126 F.3d 589, 609 (4th Cir. 1997), vacated on other grounds, 524 U.S. 935 (1998); Francis v. Woody, Civil Action No. 3:09CV235, 2009 WL 1442015, at *5 (E.D. Va. May 22, 2009) (unpublished).[2] Thus, the Eleventh Amendment bars plaintiff's claims, and the court grants defendants' motions to dismiss.

---

[2] Jennette's amended complaint, which is fourteen pages long, uses some variation of the phrase "in his official capacity" no less than 23 times.

6

III.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 25, 27, 36], and DISMISSES plaintiff's complaint.

SO ORDERED. This 9 day of November 2015.

                                              JAMES C. DEVER III
                                              Chief United States District Judge

7

Case 5:15-ct-03019-D   Document 41   Filed 11/10/15   Page 7 of 7